## HAMPSHIRE COUNTY.

### INHABITANTS OF GOSHEN *vs.* INHABITANTS OF RICHMOND.

The legislature have power to pass a statute providing that the validity of existing marriages shall not be questioned in the trial of collateral issues, on account of the insanity or idiocy of either party.

The *St.* of 1845, *c.* 222, providing that the validity of a marriage shall not be questioned in the trial of a collateral issue, on account of the insanity or idiocy of either party, applies to marriages existing at the time of its passage; and, in an action to recover for expenses incurred in support of a pauper, against a town in which his settlement is sought to be established by reason of a marriage existing before the passage of that statute, it cannot be shown in defence that the marriage was invalid, by reason of the insanity of one of the parties.

The children of a woman who marries a pauper follow his settlement.

CONTRACT to recover for expenses incurred in the support of Welcome Staunton, a pauper.

At the trial in the superior court, before *Wilkinson*, J., it ap-peared that the pauper was the son of Jesse and Lucy Staunton

and was born in 1812 in Norwich, where his mother had her settlement. The father had no settlement in this commonwealth. Jesse Staunton having died, Lucy married Jacob Redington in 1821 ; and the plaintiffs offered evidence to show that Redington had his settlement in Richmond. The defendants denied the validity of the marriage, and offered evidence to show that Redington was insane at the time it was solemnized; but the judge excluded it. The defendants also offered evidence that at the time of the marriage Redington was a pauper, and was then and afterwards supported as a pauper by the town of Richmond ; but the judge excluded it.

A verdict was returned for the plaintiffs, and the defendants alleged exceptions.

*W. Allen, Jr.*, for the defendants, cited *St.* 1793, *c.* 34, § 2 ; Rev. Sts. *c.* 75, § 5 ; *c.* 76, § 1 ; *St.* 1845, *c.* 222 ; *Dalton* v. *Bernardston*, 9 Mass. 201 ; *Whitman* v. *Hopgood*, 10 Mass. 437 ; *Middleborough* v. *Rochester*, 12 Mass. 363 ; *Somerset* v. *Dighton*, Ib. 383 ; *King* v. *Dedham Bank*, 15 Mass. 454 ; *Hampshire* v. *Franklin*, 16 Mass. 76 ; *Medford* v. *Learned*, Ib. 215 ; *Foster* v. *Essex Bank*, Ib. 245 ; *Staniels* v. *Raymond*, 4 Cush. 314 ; *King* v. *Tirrell*, 2 Gray, 331.

*C. Delano*, for the plaintiffs.

METCALF, J. The *St.* of 1845, *c.* 222, reënacted in Gen. Sts. *c.* 107, § 2, provides that " the validity of a marriage shall not be questioned in the trial of a collateral issue, on account of the insanity or idiocy of either party, but only in a process, duly instituted in the lifetime of both parties, for determining such validity." And the first question raised by the defendants is, whether this provision is to be applied to marriages existing before the statute was passed. The defendants deny that it was the intention or within the power of the legislature to make this enactment retrospective, that is, to prohibit the admission of evidence to show the invalidity of previously existing marriages. But the court do not doubt either that intention or that power of the legislature. That body has unquestionable authority to change the common law rules of evidence, to prescribe the modes of proof, and to direct who may or may not be competent

witnesses. *Commonwealth* v. *Williams*, 6 Gray, 5–7, 10. And this authority has often been exercised. Thus, the burden of proof, which by the common law is on one party, has in certain cases been put, by statute, on the other. And recent statutes have so far changed the preëxisting rules of evidence, as to make all persons (with very few exceptions) who have sufficient understanding, competent witnesses, not only in the trial of others' actions, but also of their own. Those statutes have been held to render these persons competent to testify, not only concerning matters of which they had knowledge before they were made competent, but also in cases that were pending before. No vested rights were affected by those statutes. No party to a suit has a vested right to exclude his adversary, or even a convict, from testifying against him.

The purpose of *St.* 1845, *c.* 222, was to alter the law of evidence on a single subject, by making inadmissible certain proofs which were before admissible. Before the statute was passed, these defendants might have proved that the marriage of Jacob Redington, the father of the pauper for whose support this action is brought, was invalid, by reason of his insanity. *Middleborough* v. *Rochester*, 12 Mass. 363. The effect of that proof would have been that the settlement of his wife, the pauper's mother, was not changed, but continued to be in Norwich, (now Huntington,) and that the pauper's settlement followed hers. But the statute declares that such proof shall not be given in a case like this. And the second question in the case is, whether the statute impairs any vested rights of the defendants. The court are of opinion that it does not. We cannot see any difference in principle between this case and those in which the legislature have passed statutes declaring marriages valid, which were before invalid because the magistrate or clergyman, who undertook to marry the parties, had no lawful authority to marry them. Those statutes sometimes changed the legal set tlement of mothers and children, and thus took from towns a defence, which they before had, against a claim on them for the support of those mothers and their descendants. Yet the validity of such statutes has never been denied by the court. And

Chief Justice Shaw has declared them to be " most beneficent in their purpose and design, as statutes of peace." *Jacquins* v. *The Commonwealth,* 9 Cush. 282. Further : The courts of Connecticut and Maine have decided that such statutes are valid, so far as they bear upon questions of settlement under the pauper laws; that by virtue of the statutes the settlements of the wife and children, if they were previously in a different town from that of the husband, were transferred to the town of his settlement; and that such town was bound to support them, on their becoming paupers. *Goshen* v. *Stonington,* 4 Conn. 209. *Lewiston* v. *North Yarmouth,* 5 Greenl. 66. In the latter case, Preble, J., said : " The legislature has no power to disturb vested rights; but rules for the settlement of paupers have always been regarded by the courts as matters of mere positive or arbitrary regulation, in establishing which the legislature is limited in its power only by its own perception of what is proper and expedient." These defendants had no vested right to be exempted from the charge of supporting this pauper; clearly not from the charge of supporting him after the *St.* of 1845 was passed. Whether that statute would be held to prevent a town from recovering of the defendants for support furnished to him before its passage, is a question not now before us. On this point, the decisions in Maine and Connecticut, in cases analogous to this, are directly opposite. *Brunswick* v. *Litchfield,* 2 Greenl. 28. 4 Conn. *ubi supra.*

There is no legal ground for the objection made by the defendants, at the trial, that the children of a woman who marries a pauper do not acquire or follow his settlement.

*Exceptions overruled.*